State ex rel. Thompson v. Arnold.

---

THE STATE ex rel. CHARLES S. THOMPSON, Appellant, v. G. B. ARNOLD et al., Composing Board of Election Commissioners of St. Louis.

In Banc, June 25, 1919.

1. **ELECTION: Irregularity.** An election irregularity is not fatal to the validity of the whole return of the precinct in which it occurred, unless made so by the statute, or unless it is such as probably prevented a free and full expression of the popular will.

2. ———: ———: **Stolen Registration Book: Verification Lists.** The fact that the registration book was stolen after it had been properly prepared and placed in the hands of the proper officer of the precinct, and that the statute declares that no vote shall be received by the election judges unless the name of the voter appears upon the registration book as a qualified voter, would not alone render invalid the entire return from the precinct. The mere fact that the registration book was not present at the polling place would not change the contents of the book; and where the election officials had in their hands duly authorized "verification lists" of the qualified and registered voters of the precinct, prepared as the statute required, and prepared before the registration book was stolen, and corresponding and agreeing with the registration book, and those "verification lists" were used at the election, and there is no pretense that the names of the persons who voted at such election were not upon the registration book, it cannot be held that the mere fact that the registration book was stolen invalidated the entire return from said precinct, or that the names of the voters whose votes were received were not on the registration book.

Appeal from St. Louis City Circuit Court.—*Hon. Benj. J. Klene,* Judge.

AFFIRMED.

*T. J. Rowe* and *Thos. J. Rowe, Jr.* for appellant.

(1) The writ of *mandamus* will not only require a ministerial officer to proceed to do his duty, but it also will indicate what his specific duty is. In this case the specific duty of the Board of Election Commissioners was to refuse to count the votes for the Ninth Precinct of the Nineteenth Ward. State ex rel. Metcalf v. Garesche, 65 Mo. 489; State ex rel. Booth v. Moss, 172 S. W. 1181. (2) The statutory provision, "The vote of no one shall be received by said judges whose name does not appear upon the books of registration as a qualified voter," is mandatory. Hehl v. Guion, 155 Mo. 82; Nance v. Kearbey, 251 Mo. 383; Horsefall v. School District, 143 Mo. App. 545; Ledbetter v. Hall, 62 Mo. 424. (3) The return of respondents shows that they knew that the judges of election in the Ninth Pre-

cinct of the Nineteenth Ward had no registration books and they knew that no one could vote in the Ninth Precinct of the Nineteenth Ward, consequently they knew that no election was held in the said Ninth Precinct of the Nineteenth Ward, and it was their duty to refuse to canvass and count any votes that the judges of said precinct returned. (4) There is no statutory provision which permits the judges of election to use a verification list in lieu of the registration books.

*Henry Kortjohn, Jr.* for respondents.

(1) The duty of a canvassing board is purely ministerial, and is confined to casting up the vote certified by the election officers (the judges and clerks of election). Mayo v. Freeland, 10 Mo. 632; State ex rel. Metcalf v. Garesche, 65 Mo. 487; State ex rel. Bland v. Rodman, 43 Mo. 260; State ex rel. Atty. Gen. v. Steers, 44 Mo. 227; State ex rel. Atty. Gen. v. Vail, 53 Mo. 112; State ex rel. Ewing v. Townsley, 56 Mo. 111; State ex rel. Ford v. Trigg, 72 Mo. 365; State ex rel. Hughlett v. Finley, 74 Mo. 216; State ex rel. Steadley v. Stuckey, 78 Mo. 544; State ex rel. Anderson v. Booth, 187 Mo. App. 151. (2) The returns made by the judges and clerks of election, being the genuine and legal returns, and there being nothing to indicate that a change had been made in such returns since signing the same by the judges and clerks, or any fraud in any respect touching such returns, the duty upon the canvassing board was not judicial, but merely ministerial. State ex rel. Metcalf v. Garesche, 65 Mo. 488; R. S. 1909, sec. 6234; State ex rel. Jamison v. Lesueur, 126 Mo. 416. (3) Even if the law permitted the canvassing board, being the respondents in the case at bar, to go behind the official returns of the judges and clerks, the admitted facts from the record in this case show the election in the disputed precincts, as well as in all other precincts, to have been regular, legal, without fraud, and at which only qualified electors voted, and no qualified electors were deprived of their votes. Gass v. Evans,

244 Mo. 343; McCrary on Elections (3 Ed.), 124, par. 190, 191; State ex rel. Reid v. Lebleu, 28 L. R. A. (N. S.) 989. (4) Whether or not a law requiring a certain course of conduct or thing to be done in connection with the election laws is mandatory, as distinguished from directory, so that a failure to comply with it vitiates the election, depends upon whether or not the law expressly, in specific terms, invalidates the election on account of such failure, or if on account of such failure the election would have resulted otherwise than it did. Bowers v. Smith, 111 Mo. 61; Miles v. City of Macon, 193 Mo. App. 316; Nance v. Kearbey, 251 Mo. 374; Gass v. Evans, 244 Mo. 329; Ledbetter v. Hall, 62 Mo. 422; State ex rel. Miles v. Ellison, 269 Mo. 156; Hehl v. Guion, 155 Mo. 81; McCrary on Elections (3 Ed.), 124, par. 190, 191. (5) It is admitted that the name of every qualified voter entitled to vote was contained on the registration books in both of the precincts in question, that they all registered prior to the election, and nobody's vote was received by the judges whose name did not appear upon the books of registration as a qualified voter. In one precinct the original registration book was used. In the other precinct an exact copy of the names and addresses of voters appearing on the stolen registration books was used. This does not vitiate the election in those precincts. McCrary on Elections (4 Ed.), p. 98, sec. 131; In re Wheelock, 82 Pa. St. 297; Pickett v. Russell, 42 Fla. 134.

WILLIAMS, J.—This is a mandamus proceeding, originally instituted in the Circuit Court of the City of St. Louis, whereby relator sought to compel the respondents to issue him a certificate of election to the office of Justice of the Peace for the Fifth Justice of the Peace District of the City of St. Louis. Upon a trial in the circuit court judgment went for respondents, and relator duly perfected an appeal.

Relator's petition in substance alleges that he was, at the general election held in said district on Novem-

ber 5, 1918, duly elected to the office of Justice of the Peace for the Fifth Justice of the Peace District of St. Louis, by receiving a majority of the votes cast for said office; that a majority of respondents composing said Board of Election Commissioners, although demanded so to do, had refused to issue to him the certificate of election for said office; that relator is remediless through the ordinary process of law, and therefore prays a writ of mandamus compelling the issuance to him by respondents of the said certificate of election.

Respondent's return (caption and signatures omitted) was as follows:

"Now come G. B. Arnold, Charles J. Lammert, Vincent Dempsey and O. E. Buder, composing the Board of Election Commissioners of the City of St. Louis, Missouri, and for return to the alternative writ of mandamus, heretofore issued in this cause, state as follows:

'"That Charles S. Thompson, Andrew Gazzolo, Jr., William J. Blesse and Gabriel Roth were candidates for the office of Justice of the Peace for the Fifth Justice of the Peace District in the City of St. Louis and State of Missouri, at the general election held in said Fifth Justice of the Peace District, on the 5th day of November, 1918, the said Andrew Gazzolo, Jr., and Charles S. Thompson being the Democratic candidates for said office, and William J. Blesse and Gabriel Roth being the Republican candidates for said office, and Louis Hy. Chernow being the Socialistic candidate, the names of said candidates being printed on their respective party tickets voted at said election; that in said district two justices of the peace were to be elected.

"These respondents, for further return, state that in each and all of said respective voting precincts in said Fifth Justice of the Peace District there had been provided two registry books, as required by Clause 9 of Section 6191 and Section 6198, Revised Statutes 1909, arranged alphabetically, according to the surname of

each person applying for registration, showing the number and name of the street or avenue on which he resides, his nativity, color, age, occupation, term of residence (indicating the periods by days, months or years stated by the applicant) in precinct, city and State, naturalization, how naturalized, and if the applicant was a foreign-born that he had declared his intention to become a citizen of the United States, the court, time and place where such declaration was made, that the applicant is or is not a qualified voter, the date when applicant applied to be registered and the signature or mark of the applicant, witnessed by one of the judges of registration. That besides these registry books there was provided by these respondents for each of the precincts in said district, two 'Verification Lists' and a printed list, as required by Sections 6202, 6205, Revised Statutes 1909, showing the names and addresses and color of all the voters open and unerased on each of the respective registry books in said precincts on the 19th day of September, 1918; that said 'Verification Lists' are prepared and executed by the clerks of registration in conformity with Section 6202, aforesaid, by transferring all the names open upon the registers to the left-hand pages of said 'Verification Lists,' arranging them according to the streets, avenues, alleys, or courts, beginning with the lowest residence number and placing them numerically, as nearly as possible, from the lowest up to the highest number; that when said 'Verification Lists' are correctly compiled the same contain all the names and addresses of registrants contained in the said registry books, of each of said precincts, both original and copy, but do not contain any other information contained in either of said registry books.

"Respondents further state that the clerks in each of the respective precincts in said district were required to canvass their precincts, using the 'Verification Lists,' which canvass is made on the day after registration, being on Friday and Saturday, of the seventh week prior

to a Presidential election and on Friday of the seventh week prior to any other election. That said canvass is made by the two clerks in each precinct accompanying each other and ascertaining whether the persons upon the registers reside at the places where registered on the day of said canvass. If such canvassers learn that any person upon their 'Verification Lists' does not reside at the place designated therein, they are required to make a check mark 'X' opposite such name and notify such registrant, and any other registrant opposite whose name the judges of election on registration day may have placed a check mark 'X' indicating that his right to have his name remain on the registers has been challenged, to appear on revision day, on Friday of the fourth week prior to election, to show cause why his name should not be erased from the registers and to send to such registrant a similar notice by mail not later than ten o'clock of the following Monday; that a revision of the registration by the Board of Registry, consisting of the judges and clerks of election, is required to be held on Friday of the fourth week prior to the election, as provided by Section 6206, Revised Statutes 1909, on which said date the Board of Registry erases from the registers of each precinct all names of voters to whom notice above mentioned has been given and mailed and who 'fail to respond to same; that the last registration day previous to said election on the 5th day of November, 1918, was September 19, 1918; that a canvass of the registration was made on the Friday following said registration day and that said registers were revised by the Boards of Registry in said district on the 11th day of October, 1918; that in addition to the canvass made by the clerks, as aforesaid, a police canvass of the printed list of the entire registration after the close of registration on September 19, 1918, of the Ninth and Tenth Precincts of the Nineteenth Ward, in said Justice of the Peace District, was made subsequent to said revision and prior to said election.

"These respondents further state that transfers of registered voters were made out of and into the precincts comprising said Fifth Justice of the Peace District, up to and including the 30th day of October, 1918, as required by Section 6213, Revised Statutes 1909, and registration of 'invalids' and 'absentees' in said precincts was permitted on said last mentioned date, as required by, Section 6214, Revised Statutes 1909.

"These respondents further state that in compliance with Section 6216 they caused to be delivered to the respective judges of the respective precincts of said district, at their residence, one of the registers of each respective precinct and the key to the ballot box, and to a judge of the opposite political faith, at his residence, the other of said registers, ballot box, poll books and necessary blanks and stationery and sealed packages of ballots; that after said delivery of said registry books, as aforesaid, and on the day before the election, to-wit, the 4th day of November, 1918, persons unknown to these respondents wrongfully and unlawfully obtained possession of both of the registry books in Precinct 9, Ward 19, and one of the registry books in Precinct 10 of Ward 19, which said precincts are in said district; that said books were made way with or destroyed by said persons and were unavailable for the use of the judges and clerks of election on the 5th day of November, 1918; that upon being advised of the theft of such registers, as aforesaid, the Board of Election Commissioners delivered to the judges of election in said Ninth Precinct of the Nineteenth Ward the 'Verification Lists' of said precinct, described as aforesaid, and instructed the judges and clerks of election in said Ninth Precinct to conduct the election as best they could by the use of said 'Verification Lists;' said judges of election were also instructed not to permit any name 'X' marked on said 'Verification Lists' to be voted by any person; that said judges of election in said Tenth Precinct of the Nineteenth Ward were instructed by the Board of Election Commissioners to

conduct the election with the use of the original registry book, which had been delivered to them as aforesaid; that at the close of said election the judges and clerks made their returns to the Board of Election Commissioners of the election in said precincts, in the same manner and form as the judges and clerks of election in all other precincts of said district and as required by law; that the returns made by said officials of said Ninth and Tenth Precincts are in due form and purport to be the official returns of the election held in said precincts of said district on said 5th day of November, 1918.

"Respondents further state that they received, in due course, the returns of all the judges and clerks of election in each of the precincts comprising said Fifth Justice of the Peace District, and that within eight days after said election said Board of Election Commissioners proceeded to canvass and cast up the returns of said election in said district; that in canvassing and counting the votes cast for Justice of the Peace in said Fifth District, Commissioners Arnold and Lammert held that the election in said Ninth and Tenth Precincts of said Nineteenth' Ward was not in conformity with the laws governing said election, and that the purported returns of the judges and clerks in said two precincts were not legal returns, and that in canvassing and counting the votes for Justice of the Peace in said Fifth District the returns from said two precincts should not be considered; that Commissioners Dempsey and Buder held that the absence of the voting registers in said precincts, as aforesaid, did not invalidate the returns from said precincts, and that the same should be canvassed and counted as the legal returns of said precincts, along with all other returns from said Justice of the Peace District, and the result of the election declared thereon; that the returns as made by the judges and clerks of election for the Ninth Precinct of the Nineteenth Ward in said district was as follows:

Andrew Gazzolo, Jr., received ...... 25 votes
Wm. J. Blesse received .......... 223 votes
Gabriel Roth received ............ 223 votes
Charles S. Thompson received ...... 23 votes
Louis Hy Chernow received ...... 2 votes

"That the returns as made by the judges and clerks of ·election for the Tenth Precinct of the Nineteenth Ward in said district was as follows:

Andrew Gazzolo, Jr., received ...... 40 votes
Wm. J. Blesse received .......... 219 votes
Gabriel Roth received ............ 222 votes
Charles S. Thompson received ..... 38 votes
Louis Hy Chernow received ....... 2 votes

"That the result of the election for Justice of the Peace in said district, excluding the returns of said Ninth and Tenth Precincts of said Nineteenth Ward, as shown by the official returns from all other precincts in said district, was as follows:

Andrew Gazzolo, Jr. ............ 2999 votes
Wm. J. Blesse .................. 2621 votes
Gabriel Roth ................... 2571 votes
Relator Charles S. Thompson ..... 2829 votes
Louis Hy Chernow ............. 47 votes

"That the result of the election for Justice of the Peace in said district, including the returns of said Ninth and Tenth Precincts of said Nineteenth Ward, as shown by the official returns from all of the precincts in said district, was as follows:

Andrew Gazzolo, Jr. ............ 3064 votes
Wm. J. Blesse .................. 3063 votes
Gabriel Roth ................... 3016 votes,
Relator Charles S. Thompson .... 2890 votes
Louis Hy Chernow ............. 51 votes

"These respondents further state that by reason of the division of opinion among the members of the Board of Election Commissioners, as aforesaid, no certificate of election has been issued to ·either relator Charles S. Thompson or William J. Blesse, and that

as long as these respondents are divided in opinion as to the legality of the returns in said Ninth and Tenth Precincts of said Nineteenth Ward no certificate of election for Justice of the Peace can be issued to either the relator or said William J. Blesse.

"Wherefore, these respondents, having fully answered and made return to the alternative writ of mandamus heretofore issued by this Honorable Court, do respectfully pray the judgment of this Honorable Court as to the legality of the returns of said Ninth and Tenth Precincts of said Nineteenth Ward and the judgment of this court accordingly."

Thereupon relator filed a motion for judgment on the pleadings, and upon the issues thus made trial was had, resulting as above stated.

I. Appellant in his brief refers only to the election returns from the Ninth Precincts of the Nineteenth Ward of the City of St. Louis, and we will therefore limit the discussion to that precinct.

It appears from the pleadings that the votes returned from the Ninth Precinct were sufficient to change the result of the election. If the votes, as returned from this precinct, are to be counted, the appellant was defeated and therefore the judgment below was proper. If the return from this precinct is to be disregarded, then appellant was elected and would be entitled to his certificate of election.

From the admitted facts it further appears that on the day preceding the election some person, unknown to respondents, stole the registration books of this precinct, then in the hands of the judges of election, and made way with the same, so that they were not available for use in that precinct on election day.

Section 6216, Revised Statutes 1909, provides that the Election Commissioners of St. Louis (respondents) on the day preceding any election "shall have delivered to one of said judges at his residence, one of the registers (being a book containing the names of all registered qualified voters) of said precinct, and the

key or keys if there be more than one to the ballot box, and to a judge of the opposite political party, at his residence, the other of said registers, the ballot box, poll books, verification lists and necessary blanks and stationery and a sealed package of ballots." (Parenthesis ours). This statute was complied with by the proper authorities.

Section 6220, Revised Statutes 1909, prescribes the procedure at the polls on election day and among other things provides that "the vote of no one shall be received by said judges whose name does not appear upon the books of registration as a qualified voter."

Appellant's position, as we understand it, may be briefly summarized as follows: (1) Absent the books of registration the judges of election could not know whether the voter's name appeared upon said books and therefore a legal or valid election could not have been and was not, for that reason, held in said precinct; (2) There having been no valid election in said precinct for the reasons given, the returns made by the judges of said precinct were null and void and could not be counted by the respondents in canvassing and casting up the returns of said election.

II. This is not an election contest case, but merely a proceeding by mandamus to compel respondents to issue a certificate of election to the appellant on the theory that the *legal* returns show him to have been elected to the office.

Mandamus.

Appellant's counsel, no doubt keeping in mind the difference between a suit to contest an election and this present proceeding in mandamus, frankly stated in oral argument that if a valid election were held in this precinct on election day then his client's case must fail.

III. The precise question therefore for determination is: Did the absence of the books of registration on the day of election render the election in this particular precinct void?

After a careful consideration of the matter we have reached the conclusion that this question must be answered in the negative. The well established rule, here applicable, is that an election irregularity is not fatal to the validity of the whole return of the precinct unless made so by the statute on the subject or unless the irregularity is such as "probably prevented a free and full expression of the popular will." [Bowers v. Smith, 111 Mo. 45, 1. c. 61-62; Hehl v. Guion, 155 Mo. 76, 1. c. 83; Nance v. Kearbey, 251 Mo. 374, 1. c. 383; McCrary on Elections (4 Ed.), p. 171; 9 R. C. L. p. 1093, par. 102; 15 Cyc. 372, 373.]

Applying the foregoing rule to the present case we find no statute which by express terms or by fair implication declares that the absence of the registration books would invalidate the return of such precinct. Section 6220, supra, providing that no vote shall be received by the election judges unless the name of the voter appears upon the books of registration as a qualified voter, can certainly not be given such effect.

The mere fact that the books of registration were not present at the polling place, would not change the *contents* of said books. And where, as here, the election officials had in their hands (Sec. 6216, R. S. 1909) duly authorized verification lists of the qualified and registered voters of said precinct, which verification lists under the statute (Sec. 6209, R. S. 1909) are required to "correspond and agree" with the books of registration, it appears that little difficulty would be encountered by the judges of election in determining from such official evidence in their possession whether the name of the voter was upon the books of registration. It is not ever contended by appellant in the present proceeding that the names of the persons who voted in said precinct did not appear upon such registration books.

Since the judges of election had in their possession sufficient evidence by which they could determine this fact the presumption is, nothing to the contrary appear-

ing, that they performed their duty and received the votes of all persons offering to vote whose names appeared upon the books of registration and none other. Under such circumstances a valid election was held in said precinct and the court would not be warranted in treating the return from that precinct as null and void. [Hampton v. Waldrop, 104 N. C. 453; 15 Cyc. 365.]

In this case we are not concerned with the question of whether there may have been *some* illegal votes cast in said precinct. No question of that kind is raised or even suggested in this proceeding, which, as above intimated, is quite proper, since this is not a suit to contest the result of an election. But as above stated, appellant's success in the present proceeding depends upon his presenting a ground which would strike down the *entire return* from this precinct on the theory that a valid election was not held in said precinct. The grounds presented do not show that the election in that precinct was void.

From the foregoing reasons it follows that the judgment of the circuit court should be affirmed.

It is so ordered. *Walker, Faris, Blair* and *Graves, JJ.,* concur; *Bond, C. J.,* concurs in the result; *Woodson, J.,* absent.